HOOD, Judge.
This is an action for damages instituted by the parents of a six-year-old child who was killed when struck by an automobile being driven by Maurice Bellard. The plaintiffs are Mr. and Mrs. Ulton Trahan, and the defendants are Bellard, Church Point Wholesale Company, and the latter’s insurer, Liberty Mutual Insurance Company. The case was tried by jury with the result that a special verdict was rendered finding no negligence on the part of defendant Bellard and rejecting plaintiffs’ demands. Judgment was rendered by the trial court in accordance with that verdict, and plaintiffs have appealed.
The issues presented on this appeal are: (1) Did the jury err in finding that defendant Bellard was free from negligence? (2) Did the trial judge err in refusing to give special charge No. 14 requested by plaintiffs? and (3) Did the trial judge err in giving special charge No. 7 requested by defendants ?
The accident occurred about 11:00 A.M. on March 18, 1967, on Louisiana Highway 82, known as the Pecan Island Road in Vermilion Parish. The highway at that point is a straight, level, black-topped thoroughfare, running north and south, the hard surfaced portion of the roadway being 18 feet wide. The shoulder on the east side of the highway is about six feet wide, and from the outer edge of the shoulder the ground slopes toward a canal which runs parallel to and 40 to 50 feet east of the roadway.
Immediately before the accident occurred, plaintiff Trahan brought his pick-up truck to a stop on the west side of the above mentioned highway, facing south, the left wheels of the truck being about two feet on the slab and the rest of the vehicle being on the west shoulder. Trahan’s wife and his two children were in the truck with him, and their plan was to walk from the truck across to the east side of the highway, and to fish in the canal which ran parallel to and east of it. After getting out of the truck, Mr. Trahan and his six-year-old son, Billy, went to the rear of that vehicle to get their fishing rods and equipment. They got the equipment they wanted, and then proceeded to walk or run from behind the truck on the west side of the highway to the east side of it.
After Trahan and Billy had crossed the hard surfaced slab, and while Billy was on the east shoulder of the highway, he was struck by the front of an automobile which was being driven north on the highway by defendant Bellard. The evidence shows that immediately before the accident occurred, the Bellard car skidded some distance in the north bound lane of the highway, that it then veered to its right onto the east shoulder, and that it struck the child when he was a few feet east of the east edge of the slab.
Plaintiffs’ version of the facts is different from that of defendants. Mr. Trahan testified that he and his young son, Billy, walked from the west to the east side of the highway, and that after they arrived. on the east shoulder the automobile driven by Bellard veered off the pavement and struck young Billy while he was on the shoulder, approximately six to ten feet from the slab. Mr. Trahan stated that as he walked across the highway, his son was walking by his side, and that he neither saw nor heard any vehicles approaching until after he and his son had reached the east shoulder of the road. Trahan’s testimony is supported by that of his wife and daughter.
Defendant Bellard testified that young Billy darted from behind the parked truck directly in front of his approaching automobile, and that the child continued to run in an easterly direction across the highway. He stated that he had not seen any one *628 around the truck or on the highway prior to the time the boy darted from behind the vehicle, and that as soon as he saw the child he applied his brakes and turned to his right in an effort to avoid an accident. He testified that the child was alone when he started across the highway, that Billy continued to run until the moment the car struck him, and that it was impossible for Bellard to avoid the accident after the child darted into the highway. His testimony is supported to some extent by that of the state trooper who investigated the accident, by that of two witnesses who were nearby and who came to the scene of the accident immediately after it occurred, and by that of Bellard’s daughter.
Plaintiffs contend that Bellard was negligent in driving at an excessive rate of speed. They base that contention largely on the fact that long skid marks were left by the Bellard car, and plaintiffs argue that it thus must have been travel-ling at a high rate of speed. One witness who visited the scene a few hours after the accident occurred testified that according to his measurements the Bellard car skidded 182 feet before it completely left the -hard surfaced slab, and that the car skidded an additional distance of 60 feet after it was entirely on the shoulder. The state trooper who investigated the accident testified that the car skidded a distance of 86 feet up to the point of impact, and a distance of 92 feet beyond that point. Bellard estimated his speed at about 55 miles per hour as he approached the scene, and this estimate is confirmed by that of David Babineaux who saw the car approaching and testified that it was being driven at a speed within the 60 mile per hour speed limit. In our opinion the length of the skid marks does not show that Bellard was speeding, especially when we consider that a portion of those skid marks were made while some or all of the wheels of the car were on the grass covered shoulder of the highway. Our conclusion is that Bellard was not driving at an excessive rate of speed.
Plaintiffs argue that Bellard’s brakes were defective, and they base that argument on the fact that the right wheels made heavier skid marks than did the left. Plaintiffs did not allege faulty brakes as one of the acts of negligence of the defendant, and no evidence of any kind, expert or otherwise, was offered to show that the brakes were defective, other than proof that the skid marks made by the right wheels were darker than those made by the left wheels. We think the evidence fails to show that the brakes on the Bel-lard car were defective.
Plaintiffs also argue that Bellard should have seen the child and other members of the Trahan family behind the truck as he approached. They point out that the back window of the truck cab was wide, and that Bellard thus could have seen people behind the truck by looking through both the windshield and the back window. We, like the jury, do not feel that the evidence can support a conclusion that Bel-lard was negligent in having failed to see any one behind the truck as he approached. It is doubtful that Billy and his young sister were tall enough to be visible through the back window, even if they were standing straight and in the proper position to be seen through the windshield and rear window. Also, there is some testimony which the jury may have accepted to the effect that Mr. Trahan had crossed the highway before the Bellard car approached, and that he was fishing in the canal when the accident occurred.
Findings of fact by the trial court or jury, particularly those involving the credibility of witnesses, are entitled to great weight on appeal, and determinations made by the trial judge or jury as to the facts will not be disturbed unless found to be clearly erroneous. Evers v. State Farm Mutual Automobile Insurance Company, 187 So.2d 217 (La.App. 3d Cir. 1966).
We have reviewed the evidence carefully, and have concluded that no clear error was committed by the jury or *629 the trial judge in accepting defendants’ version of the facts. We find that the child darted into the highway from behind the truck, directly in front of the approaching Bellard vehicle, in such a manner that it was impossible for Bellard to avoid the accident. Under these circumstances, we agree with the jury that Bellard was free from negligence.
At the trial, plaintiffs requested that several special charges be given to the jury. Some were given and others were refused. One of the special charges requested by plaintiffs and refused by the trial judge is Special Charge No. 14. This requested charge reads as follows:
“As I have already instructed you, the law provides that the pedestrian’s right to use the public roads is equal to the right of the motorist to use the public roads. Also a person on or near a public road has a right to presume that the motorist using a public highway or roadway will obey rules regulating vehicular traffic; such a person has a right to presume, and to rely upon that presumption, that a motorist will keep a proper look-out for children; that he will keep his vehicle under such control as to be able to stop within the range of his vision, and that his vehicle is mechanically sound.
“The effect of these rules of law is that the act of a person standing on the shoulder of a roadway or of a parent momentarily permitting a child of tender years to stand on the shoulder of a public roadway, away from the traveling lanes in and of itself is not an act of actionable negligence where such a person or such a child is injured while standing on such shoulder by a motorist who permits his vehicle to leave the traveled roadway as a result of any negligent act of omission or commission. In such a situation a parent thus leaving a child of tender years to stand on the shoulder of such a roadway as a matter of law cannot be found guilty of contributory negligence.”
The trial judge assigned as reasons for his refusal to give that charge, that he did not agree that the second paragraph of the charge is correct. This requested charge relates to the question of whether plaintiffs are barred from recovery because of contributory negligence. Since the jury concluded that the defendant driver was not negligent, it was unnecessary for it to consider the question of whether plaintiffs are barred from recovery because of contributory negligence. We have affirmed the factual finding of the jury that Bellard was free from negligence, and thus it is unnecessary for us to consider the question of contributory negligence on the part of plaintiffs. It is immaterial, therefore, that plaintiffs’ requested Special Charge No. 14 was refused by the trial court.
Finally, plaintiffs contend that the trial judge erred in giving Special Charge No. 7 which was requested by defendants. This charge reads:
“A motorist’s duty is to exercise ordinary care in the operation of his vehicle to avoid injuries to anyone including a child, and there is no duty to exercise any greater degree of care with reference to a child, unless it is proved that the child’s presence was known, or should have been known to the driver of the vehicle.”
We find no error in the statement of law as contained in that requested charge. See Campo v. Vampran, 183 So.2d 57 (La.App. 1st Cir. 1966).
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff s-appellants.
Affirmed.